UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

———————————————————————————

SHANE S.,[1]

                                Plaintiff,                         DECISION AND ORDER

-vs-

                                                  24-CV-1028-MAV

COMMISSIONER OF SOCIAL SECURITY,

                              Defendant.

———————————————————————————

## INTRODUCTION

In October 2024, Shane S. ("Plaintiff") filed this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the Commissioner of the United States Social Security Administration's ("Commissioner") denial of his application for Disability Insurance Benefits ("DIB"). ECF No. 1. Both parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). ECF No. 6 (Plaintiff); ECF No. 8 (Commissioner). For the reasons set forth below, Plaintiff's motion for judgment on the pleadings [ECF No. 6] is denied. The Commissioner's motion [ECF No. 8] is granted.

## PROCEDURAL HISTORY

The Court assumes the reader's familiarity with the facts and procedural history in this case, and therefore addresses only those facts and issues which bear directly on the resolution of the motions presently before the Court.

---

[1] The Court's Standing Order issued on November 18, 2020, directs that, "in opinions filed pursuant to . . . 42 U.S.C. § 405(g), in the United States District Court for the Western District of New York, any non-government party will be identified and referenced solely by first name and last initial."

## I. Plaintiff's Application

Plaintiff filed his application for DIB in February 2021, alleging a disability onset date of October 3, 2020. Administrative Record ("AR"), 180,[2] ECF Nos. 3–4. He identified a single condition that he claimed limited his ability to work: post-traumatic stress disorder ("PTSD"). AR at 209. In May 2021, the Commissioner found that Plaintiff was "not disabled," and his claim for DIB was denied. AR at 61–72. Plaintiff requested a reconsideration of the initial determination, and in October 2021 was again found "not disabled." AR at 73–85. Plaintiff then appeared with counsel via telephone in February 2022 for a hearing before an Administrative Law Judge ("ALJ"). AR at 39–60. After reviewing the evidence, including testimony during the hearing, the ALJ found on May 4, 2022 that Plaintiff was not disabled, and not entitled to DIB. AR at 20–34.

After the Commissioner's Appeals Council denied his request for review of the ALJ's decision (AR at 1–6), Plaintiff appealed to the district court under 42 U.S.C. § 405(g), maintaining that the conclusions and findings of fact of the ALJ were not supported by substantial evidence and were contrary to law and regulation. AR at 1321. Before the matter could be heard by the district court, the parties stipulated and agreed that the court should reverse the Commissioner's decision and remand the matter for further administrative proceedings and a new decision. AR at 1413. Accordingly, in May 2023 the district court remanded the matter to the

---

[2] The page references are to the bates numbers inserted by the Commissioner, not the pagination assigned by the Court's CM/ECF electronic filing system. Further, the transcript in this case was filed in two parts. Pages 1–1424 are at ECF No. 3. Pages 1425–2266 are at ECF No. 4.

Commissioner. *Id.*

## II. Post-Remand Proceedings

In August 2023, the Appeals Council issued an order remanding the case to the ALJ. AR at 1408–10. The remand order directed the ALJ to give further consideration to Plaintiff's maximum residual functional capacity during the entire period at issue and provide a rationale with specific references to evidence of record in support of assessed limitations, and, if necessary, to obtain additional evidence from Plaintiff's medical sources and additional medical opinion evidence from an expert. *Id.* A hearing was scheduled for December 2023 at which Plaintiff would again appear with counsel by telephone. AR at 1459–64.

At the hearing, Plaintiff elaborated on the PTSD symptoms he had been suffering from since October 2020:

> Most prominently is, would be just my paranoia. I get very scared easily. My anxiety is through the roof like most days I'm not able to even leave my house multiple times a week because it's so bad. And just my focus and concentration is not really there much. I have a very hard time concentrating. My sleep is very deprived most nights due to nightmares and just a[n] overwhelming feeling of my body just not being able to rest and sleep.

AR at 1273. He further testified that the nightmares occurred multiple times each week, he slept only approximately four hours per night, and experienced multiple panic attacks weekly. AR at 1273–75. He stated that, due to his condition, he had been in treatment for his mental health continuously since 2011, including both counseling and psychotropic medication. AR at 1276–78. Besides the nightmares and panic attacks, Plaintiff also said he had symptoms related to depression, spending five or six days a month in bed during the daytime, and struggling to keep up with

3

daily routines such as personal hygiene and getting dressed. AR at 1282–83.

In addition to discussing his mental impairments, Plaintiff's counsel asked him about his physical conditions, including a carpal tunnel release surgery on his left hand in February 2022. AR at 1278. Plaintiff stated that he had been diagnosed with carpal tunnel syndrome for "six or seven years . . . maybe more," that it affected both hands, and that the surgery did not help. AR at 1279. He explained that when he used his hands a lot, all the joints in his fingers became very painful. AR at 1279–80.

The ALJ also heard testimony from Vocational Expert Dawn Blythe (the "VE"). AR at 1286–87. The VE testified that there were jobs available in the national economy which a hypothetical claimant with restrictions due to mental impairments similar to Plaintiff's could perform if he had no physical restrictions, but that combining exertional or manipulative limitations with the restrictions due to mental impairments similar to Plaintiff's would preclude any jobs. *Id.*

## III. The ALJ's Decision

On June 27, 2024, the ALJ issued a decision finding that Plaintiff was not disabled, and therefore did not qualify for DIB. AR at 1259.

At the outset, the ALJ found that Plaintiff met the insured status requirements for DIB[3] through December 31, 2025, and had not engaged in substantial gainful activity since his alleged onset date of October 3, 2020. AR at 1245. Then, at step two of the Commissioner's "five-step, sequential evaluation process," [4] the ALJ

---

[3] Claimants must meet the insured status requirements of the Social Security Act to be eligible for DIB. *See* 42 U.S.C. § 423(c); 20 C.F.R. § 404.130.

[4] In addition to the insured status requirements for DIB benefits, the Social Security Administration has outlined a "five-step, sequential evaluation process" that an ALJ must follow to determine whether a claimant has a "disability" under the law:

determined that Plaintiff had three severe impairments, each of which were mental: PTSD, depression, and unspecified anxiety disorder. AR at 1245–47. Further, after consideration of the record, he found that Plaintiff had multiple non-severe impairments, as well, including carpal tunnel syndrome, carpal tunnel release surgery, right cubital tunnel syndrome, bronchitis, hypertension, lumbar and cervical degenerative disc disease. *Id.* After discussing the evidence supporting his conclusion that these impairments were non-severe, the ALJ concluded that the overall medical evidence of record indicated that Plaintiff had "no severe physical impairments that cause any exertional . . . restrictions . . . ." AR at 1246.

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings"). AR at 1247–50. Then, before proceeding to step four, the ALJ determined that Plaintiff had the residual functional capacity[5] ("RFC") to perform a full range of work at all exertional levels but with several non-exertional limitations:

_____

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a "residual functional capacity" assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014); citing, *inter alia*, 20 C.F.R. § 404.1520(a)(4)(i)–(v), § 416.920(a)(4)(i)–(v)). The claimant bears the burden of proof for the first four steps of the process. 42 U.S.C. § 423(d)(5)(A); *Melville v. Apfel*, 198 F.3d 45, 51 (2d Cir. 1999). At step five, the burden shifts to the Commissioner to demonstrate that there is other work in the national economy that the claimant can perform. *Poupore v. Astrue*, 566 F.3d 303, 306 (2d Cir. 2009).

[5] "Residual functional capacity" ("RFC") means the most that the claimant can still do in a work setting despite the limitations caused by the claimant's impairments. 20 C.F.R. § 404.1545.

> [Plaintiff] is limited to simple, routine, repetitive tasks; simple work-related decisions with occasional interactions with supervisors, coworkers, and the general public, and occasional changes to the work setting and routine.

AR at 1250.

At step four, the ALJ found that Plaintiff was unable to perform his past relevant work. AR at 1257–58. Nevertheless, the ALJ found that based on Plaintiff's age, education, work experience, and RFC, as well as the testimony of the VE, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform, such as a hand packager, a cleaner, and a housekeeper. AR at 1258–59. Therefore, the ALJ found that Plaintiff was not disabled, and not entitled to DIB payments. AR at 1259.

It does not appear that Plaintiff filed any exceptions disagreeing with the hearing decision with the Appeals Council, or that the Appeals Council assumed jurisdiction of the case following the ALJ's June 2024 decision. 20 C.F.R. § 404.984(a)–(b). Accordingly, the ALJ's decision became the final decision of the Commissioner. *Id.* Plaintiff filed the instant complaint on October 23, 2024.

## LEGAL STANDARD

Under 42 U.S.C. § 423(d), a claimant is disabled and entitled to DIB if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months."

Where an individual's application for DIB has been denied, 42 U.S.C. § 405(g)

defines the process and scope of judicial review of the Commissioner's final decision. The fourth sentence of § 405(g) authorizes the reviewing court to enter "a judgment affirming, modifying, or reversing the decision of the Commissioner . . . with or without remanding the cause for a rehearing." The sixth sentence authorizes the reviewing court to "order additional evidence to be taken before the Commissioner . . . upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." *Tirado v. Bowen*, 842 F.2d 595, 597 (2d Cir. 1988) (discussing § 405(g)).

"The entire thrust of judicial review under the disability benefits law is to ensure a just and rational result between the government and a claimant, without substituting a court's judgment for that of the [Commissioner], and to reverse an administrative determination only when it does not rest on adequate findings sustained by evidence having rational probative force." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988) (internal citation and quotation marks omitted). Therefore, it is not the reviewing court's function to determine *de novo* whether the claimant is disabled. *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 447 (2d Cir. 2012). Rather, the reviewing court must first determine "whether the Commissioner applied the correct legal standard[s]." *Tejada v. Apfel*, 167 F.3d 770, 773 (2d Cir. 1999). Provided the correct legal standards are applied, the district court's review is deferential: a finding by the Commissioner is "conclusive" if it is supported by "substantial evidence." 42 U.S.C. § 405(g).

"Whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019)

(noting that the phrase "substantial evidence" is a term of art used in reviewing administrative agency decisions to signify evidence that amounts to "more than a mere scintilla"). Thus, once an ALJ finds facts, a reviewing court can reject those facts "only if a reasonable factfinder would have to conclude otherwise." *Brault*, 683 F.3d at 448. Yet, although "the evidentiary threshold for the substantial evidence standard is not high, . . . [it] is also not merely hortatory: [i]t requires relevant evidence which would lead a reasonable mind to concur in the ALJ's factual determinations." *Colgan v. Kijakazi*, 22 F.4th 353, 359 (2d Cir. 2022) (internal quotation marks omitted).

## DISCUSSION

In his motion for judgment on the pleadings, Plaintiff presents two challenges to the ALJ's decision. ECF No. 15-1. First, Plaintiff argues that despite the ALJ's finding at step two that he had non-severe physical impairments, the ALJ failed to consider these non-severe impairments and associated limitations when formulating the RFC. ECF No. 6-1 at 14–17. Second, Plaintiff argues that the ALJ's RFC formulation both was based on his own lay opinion, and insufficiently discussed how the ALJ arrived at his conclusions. *Id.* at 17–23. For the reasons that follow, the Court finds that Plaintiff's arguments are without merit.

## I. The ALJ's Consideration of Plaintiff's Non-severe Physical Limitations

As indicated above, at step two of his decision, the ALJ found that Plaintiff had several medically-determinable physical impairments – carpal tunnel syndrome, carpal tunnel release surgery, right cubital tunnel syndrome, bronchitis, hypertension, lumbar and cervical degenerative disc disease – but that these impairments were non-severe. AR at 1246. Plaintiff argues that the ALJ committed

8

legal error because although the regulations require the ALJ to consider all of a claimant's medically determinable impairments in assessing the claimant's RFC, "there is no evidence that the ALJ ever considered the combined impact of Plaintiff's severe *and* non-severe impairments in making his RFC finding." ECF No. 6-1 at 16. Most significantly, Plaintiff points out that the ALJ did not address Plaintiff's bilateral carpal tunnel syndrome or its associated limitations in the RFC formulation.

### A. Legal Principles

At step two of the Commissioner's five-step sequential analysis, the ALJ must determine first whether the claimant has any medically determinable physical or mental impairments, and then consider the severity of those impairments. 20 C.F.R. §§ 404.1520(a)(4)(ii), 404.1521. A physical or mental impairment is a "medically determinable impairment" if it can be established by objective medical evidence from an acceptable medical source. 20 C.F.R. § 404.1521. A medically determinable impairment is "severe" if it "significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c).

In assessing a claimant's residual functional capacity, the regulations require the ALJ to "consider all of [the claimant's] medically determinable impairments of which [the ALJ is] aware, including [the] medically determinable impairments that are not 'severe' . . . ." 20 C.F.R. § 404.1545(a)(2). Under most circumstances, failure to address non-severe mental impairments in formulating a claimant's RFC is grounds for remand to the Commissioner for further consideration. *See Parker-Grose v. Astrue,* 462 F. App'x 16, 18 (2d Cir. 2012).

Another court in this district has summarized the requirements of this

provision as follows:

> "[T]he Commissioner's procedures do not permit the ALJ to simply rely on his finding of non-severity as a substitute for a proper RFC analysis." [*Wells v. Colvin*, 727 F.3d 1061, 1065 (10th Cir. 2013)] (citing Social Security Ruling 96-9p, 1996 WL 374184, at *4 (July 2, 1996)). Moreover, "the ALJ's 'RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts and nonmedical evidence.'" *Id.* (quoting SSR 96-8p, 1996 WL 374184, at *7). Even when an ALJ uses "language suggesting he had excluded [mental impairments] from consideration as part of his RFC assessment[ ] based on his determination of non-severity" at step two, he must explicitly analyze the non[-]severe impairments as part of his RFC analysis, *see id.*, unless he finds "at step two that a medically determinable impairment posed no restriction on the claimant's work activities," *id.* at 1065 n.3 . . . .

*MacDonald v. Comm'r of Soc. Sec.*, No. 17-CV-921, 2019 WL 3067275, at *3 (W.D.N.Y. July 11, 2019).

**B. The ALJ's Decision**

Here, the ALJ was not required to specifically analyze Plaintiff's non-severe impairments as part of his RFC discussion because he found at step two that Plaintiff's medically determinable impairments did not cause any physical limitations and therefore posed no restrictions to his work activities. AR at 1246. *See, e.g., Annette A. v. Comm'r of Soc. Sec.*, No. 23-CV-6087-FPG, 2024 WL 2956906, at *3 (W.D.N.Y. June 12, 2024) (finding no error where there was no analysis in the RFC discussion regarding a non-severe mental impairment but it was "evident that the ALJ found that Plaintiff's depression did not cause any functional limitations warranting a more restrictive RFC"). Further, the ALJ's discussion of Plaintiff's non-severe impairments at step two permits the Court to "glean the rationale of [the] ALJ's decision," and determine that it was supported by substantial evidence.

*Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983).

For instance, at step two the ALJ specifically addressed Plaintiff's carpal tunnel syndrome, noting that Plaintiff had testified to continued pain and numbness in his fingers despite surgery in 2021. AR at 1245. However, the ALJ noted that Plaintiff also reported to his medical providers that he continued to perform handyman work, complete his activities of daily living, and exercise (including lifting weights, kayaking, and fishing). AR at 1245–46 (citing AR at 1626, 1656, 1800, 1802, 1807, 1809). Additionally, the ALJ observed that while some exams indicated tingling or numbness in Plaintiff's fingers, Plaintiff was "otherwise consistently noted to exhibit no upper extremity motor loss or weakness with intact 5/5 strength, including grip and normal wrist and finger range of motion." AR at 1245–46 (citing AR at 1653, 1655–56, 1671, 1810).

The ALJ also discussed the report from consultative medical examiner Nikita Dave, M.D. AR at 1246 (discussing the report at AR 413–15). As the ALJ stated, Dr. Dave indicated "unremarkable" physical findings, and opined based on a physical exam that Plaintiff had no limitations. AR at 1246. Indeed, Dr. Dave's exam showed normal gait, normal musculoskeletal findings, 5/5 strength in the upper and lower extremities, intact hand and finger dexterity, and 5/5 grip strength bilaterally. AR at 414–15. The ALJ found Dr. Dave's assessment to be persuasive because it was "consistent with the overall medical evidence of record that the [Plaintiff] ha[d] no severe physical impairments that cause[d] any exertional or [non]exertional [6]

---

[6] The Court acknowledges that the actual language quoted here reads "no severe physical impairments that cause[d] any exertional or exertional restrictions." AR at 1246. Nevertheless, when read in the context of the ALJ's full RFC discussion, it is clear that the reference was to exertional or

11

restrictions . . . ." AR at 1246.

To be sure, Dr. Dave's 2021 examination of Plaintiff preceded his February 2022 carpal tunnel release surgery. Nevertheless, most of the records referenced by the ALJ as consistent with Dr. Dave's opinion post-date the surgery. *See, e.g.,* AR at 1653–55 (noting, in April 2023, that Plaintiff "exercises regularly," and experiences paresthesia on the lateral aspect of his right arm and bilateral hands in digits 1-3, but denies weakness and has intact strength and sensation throughout all extremities). *See also, e.g., Becky S. v. Comm'r of Soc. Sec.,* No. 22-CV-06321-HKS, 2025 WL 306531, at *8 (W.D.N.Y. Jan. 27, 2025) ("an ALJ need not disregard a medical opinion just because evidence was entered into the record post-dating the opinion . . . . Instead, the key inquiry is the consistency of the opinion with the later generated evidence.") (internal quotation marks and citation omitted).

Because the ALJ found that Plaintiff's physical impairments caused no restrictions or limitations, he was not required to evaluate them again in his RFC discussion. *See, e.g., Wells,* 727 F.3d at 1065 n.3 ("An ALJ could, of course, find at step

---

*nonexertional* restrictions. Under the regulations, exertional limitations signify restrictions affecting the claimant's "ability to meet the strength demands of jobs" (e.g., standing, walking, lifting, carrying, pushing, pulling), while nonexertional limitations signify restrictions affecting the claimant's "ability to meet the demands of jobs other than strength demands" (e.g., mental functioning, difficulty tolerating environmental factors such as cold, heat, dust, etc., manipulative and postural limitations). 20 C.F.R. § 404.1569a(b)–(c). The ALJ's discussion of the evidence immediately preceding the above-quoted language references Plaintiff's "working with his hands doing handyman jobs" and "normal wrist and finger range of motion." AR at 1245–46. The discussion also references generally "unremarkable physical testing" and "physical exam findings" that were "grossly unremarkable." AR at 1246. Thus, the Court concludes the ALJ was assessing both exertional and nonexertional restrictions, and the exclusion of "non" from one or other of the instances of "exertional" to have been scrivener's error. *See, e.g., Ortiz v. Colvin,* 298 F. Supp. 3d 581, 591 (W.D.N.Y. 2018) (collecting cases regarding ALJ "scrivener's error"); *see also Michelle O. o/b/o A.M.O. v. Comm'r of Soc. Sec.,* No. 6:23-CV-6328-LJV, 2025 WL 1413240, at *5 n. 6 (W.D.N.Y. May 15, 2025) (discussing the difference between "mere scrivener's error" and mistakes a Court may not overlook).

two that a medically determinable impairment posed no restriction on the claimant's work activities . . . . Such a finding would obviate the need for further analysis at step four."). Consequently, the Court finds that Plaintiff's first argument in favor of remand has no merit.

## II. The ALJ's RFC Formulation

Plaintiff also argues that the ALJ formulated the RFC based on his own lay interpretation of the evidence, and failed to provide a sufficient discussion of how the RFC was crafted. ECF No. 6-1 at 17. In support of these arguments, Plaintiff notes that of the five opinions in the record related to his mental impairments, the ALJ completely rejected two of the opinions and found the other three only partially persuasive. *Id.* He also observes that the ALJ failed to perform a function-by-function analysis to explain what evidence led him to conclude Plaintiff could perform the specific mental RFC.

### A. Legal Principles

A claimant's RFC is defined as "the most [a claimant] can still do despite [their] limitations" and is assessed by the ALJ "based on *all* of the relevant evidence" in the record. 20 C.F.R. § 404.1545(a)(3) (emphasis added)). Social Security Ruling 96-8P ("SSR 96-8P") instructs that "[t]he RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." *Assessing Residual Functional Capacity in Initial Claims, SSR 96-8P*, 1996 WL 374184, at *7 (S.S.A. July 2, 1996). Additionally, the RFC assessment "must always consider and address medical source opinions," and "[i]f the RFC assessment

13

conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." *Id.*

In making the RFC assessment, it is well-settled that "[an] ALJ cannot arbitrarily substitute [his] own judgment for competent medical opinion." *McBrayer v. Sec'y of Health & Hum. Servs.*, 712 F.2d 795, 799 (2d Cir. 1983) ("[T]he ALJ cannot arbitrarily substitute his own judgment for competent medical opinion."). Nevertheless, an RFC finding "is administrative in nature, not medical, and its determination is within the province of the ALJ, as the Commissioner's regulations make clear." *Curry v. Comm'r of Soc. Sec.*, 855 F. App'x 46, 48 (2d Cir. 2024) (citing 20 C.F.R. § 404.1527(d)(2)).

Where "the record contains sufficient evidence from which an ALJ can assess the claimant's residual functional capacity, a medical source statement or formal medical opinion is not necessarily required." *Monroe v. Comm'r of Soc. Sec.*, 676 F. App'x 5, 8 (2d Cir. 2017) (quotations, citations, and brackets omitted); *see also Cook v. Comm'r of Soc. Sec.*, 818 F. App'x 108, 109 (2d Cir. 2020) ("[A]lthough there was no medical opinion providing the specific restrictions reflected in the ALJ's RFC determination, such evidence is not required when the record contains sufficient evidence from which an ALJ can assess the claimant's residual functional capacity.") (quotations and citation omitted)). "Indeed, it is the very duty of the ALJ to formulate an RFC based on all relevant evidence, not just medical opinions, in Plaintiff's record." *Jennifer O. v. Comm'r of Soc. Sec.*, No. 20-cv-1474, 2022 WL 2718510, *4 (W.D.N.Y. July 13, 2022) (citing 20 C.F.R. § 404.1545(a)(1)).

Thus, the ALJ is entitled to weigh all of the evidence available to make an RFC

finding that was consistent with the record as a whole, and his conclusion need not perfectly correspond with any of the opinions of medical sources cited in his decision. *See Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013). "Stated another way, an ALJ need not base an RFC on a formal medical opinion when the record 'otherwise contains a useful assessment of a claimant's functional abilities from a medical source.'" *Richard R. v. Comm'r of Soc. Sec.*, No. 6:23-CV-6346-LJV, 2024 WL 4064084, at *3 (W.D.N.Y. Sept. 5, 2024) (quoting *Gulczewski v. Comm'r of Soc. Sec.*, 464 F. Supp. 3d 490, 497 (W.D.N.Y. 2020)).

## B. The Evidence Supporting the ALJ's Decision

The ALJ's decision provided a lengthy analysis of the medical and nonmedical evidence in the record in light of Plaintiff's symptoms, as well as multiple opinions, and reached a conclusion supported by substantial evidence.

With respect to the treatment records regarding Plaintiff's mental impairments, the ALJ noted that the records included instances of Plaintiff reporting psychiatric symptoms (AR at 1251 citing AR at 310), making suicidal statements when intoxicated (*Id.* citing AR at 314), and panic attacks and increased depression (*Id.* citing AR at 313, 939, 1619, 1653, 1656, 1661–62). However, the ALJ also pointed to treatment records showing Plaintiff reported doing "good" and denying suicidal intent (AR 1252 citing AR at 310), denying worsening depression and psychiatric symptoms (*Id.* citing AR at 426, 470, 946), and as recently as 2022 and 2023 denying acute distress, suicidal intent, flashbacks or nightmares (*Id.* citing AR at 1232, 1015, 1801, 1831, 1877). He further cited records in which Plaintiff reported doing generally well or really well (*Id.* citing AR at 1652, 1661, 1800), stopping all medications except

trazodone (*Id.* citing AR at 1800, 1811), and even a 10-month gap in counseling between June 2022 and April 2023 that coincided with his sobriety (*Id.* citing AR at 1661, 1800). Lastly, the ALJ noted Plaintiff's reports of doing handyman work, his activities of daily living, and things such as kayaking, hiking, and fishing. AR at 1252 (citing AR at 1626, 1656, 1800, 1802, 1809).

Similarly, the ALJ observed that Plaintiff's medical examinations revealed signs and findings such as flat affect and soft speech, poor eye contact, anxious affect, impaired judgment, and a down or anxious mood. AR at 1252 (citing AR at 310, 319, 343, 1620, 1634, 1640, 1643). Nevertheless, the ALJ also cited to multiple exam records showing such relatively unremarkable findings as full orientation, appropriate eye contact, pleasant mood, good hygiene, good insight and judgment, linear thought processes, no acute distress, normal psychomotor activity, cooperative thought process, and intact cognitive function. *Id.* (citing AR at 310, 312, 397, 865, 923). The ALJ indicated that examinations in 2022 and 2023 also showed cooperative behavior, alert mental status, full orientation, directed thought process, good insight and judgment, intact memory, and no cognitive concerns. AR at 1252–53 (citing AR at 1015, 1620, 1634, 1640, 1643, 1662, 1801, 1810, 1831, 1877, 1921).

Moreover, as Plaintiff points out, the ALJ in the present case considered opinions from several sources: the medical opinion of consultative psychological examiner Susan Santarpia, Ph.D., who examined Plaintiff in April 2021 (AR 1253–54); the prior administrative medical finding of non-examining state agency psychological consultant J. May, PhD, who reviewed Plaintiff's file in May 2021 (AR at 1254); the prior administrative medical finding of non-examining state agency

psychological consultant L. Dekeon, PhD, who reviewed Plaintiff's file in June 2021 (AR at 1254); the August 2021 source statement from licensed clinical social worker Jennifer Walton (AR at 1254–55); and a post-hearing medical interrogatory from Marcus VanSickle, PhD (AR at 1256).

Although Plaintiff makes much of the ALJ's rejection of these opinions, a close reading of the ALJ's decision reveals that with respect to Dr. Santarpia's opinion, the findings of Dr. May and Dr. Dekeon, and the interrogatory of Dr. VanSickle, those portions of the opinions which the ALJ rejected were actually those which found Plaintiff to be *less* restricted or limited than the ALJ found to be warranted by the medical evidence. For instance, the ALJ cited specific record evidence to conclude that "other medical evidence and hearing testimony showed [Plaintiff] to be more restricted than Dr. Santarpia's assessment . . . particularly regarding [Plaintiff]'s ability to interact socially at work and adapt to workplace changes." AR at 1254. Likewise, the ALJ found the findings of Dr. May and Dr. Dekeon – which suggested Plaintiff's mental impairments were nonsevere – to be unpersuasive because they were not consistent with the objective medical records with psychiatric findings indicating flat affect, anxious affect, impaired judgment, and thought process blocking. *Id.* Finally, the ALJ agreed with Dr. VanSickle's assessment that Plaintiff's impairments did not satisfy the listings at step three, but was not persuaded by Dr. VanSickle's conclusions that Plaintiff had no vocational restrictions because "[t]his portion of the opinion is inconsistent with the overall record showing the claimant has severe mental impairments that cause moderate limitations . . . ." AR at 1256.

With respect to LCSWR Walton's source statement, the ALJ found it

persuasive where it was consistent with the ALJ's finding that Plaintiff had "severe mental impairments that would have some effect on [his] ability to perform tasks, make decisions, interact socially at work, and tolerate workplace change," but disagreed with severe degree of limitation that LCSWR Walton indicated. AR at 1255. Again including extensive citation to the medical evidence discussed and cited above, the ALJ found that a review of the record as a whole failed to support LCSWR Walton's assessment of the degree of limitation caused by Plaintiff's impairments. *Id.*

In short, the ALJ applied the appropriate legal standards, formulated an RFC that was supported by substantial evidence, and included a narrative discussion that described the evidence supporting each of his conclusions, including by citing to specific medical facts and nonmedical evidence. *See SSR 96-8p*, 1996 WL 374184 at *7. Contrary to what Plaintiff's arguments imply, "there is no requirement that an ALJ's RFC finding be based on a medical opinion." *Nicholas F. v. Comm'r of Soc. Sec.*, No. 1:21-cv-261-DB, 2023 WL 3901692, at *8 (W.D.N.Y. June 8, 2023) (collecting cases). "Indeed, an ALJ may formulate an RFC absent any medical opinions" and "is free to reject portions of medical-opinion evidence not supported by objective evidence." *Demeca P. v. Comm'r of Soc. Sec.*, No. 1:22-cv-0504, 2024 WL 4505265, at *4 (W.D.N.Y. Oct. 16, 2024).

At its core, then, Plaintiff's argument boils down to a disagreement with how the ALJ weighed the evidence in the record in determining his RFC. *David M. v. Comm'r of Soc. Sec.*, No. 21-CV-00230-LJV, 2023 WL 5200160, at *4 (W.D.N.Y. Aug. 14, 2023). Because it is "not the function of this Court to re-weigh evidence or consider de novo whether [Plaintiff] is disabled," the Court declines to second guess the ALJ's

determination here. *Teena H. o/b/o N.I.K. v. Comm'r of Soc. Sec.*, 521 F. Supp. 3d 287, 292 (W.D.N.Y. 2021).

### C. The ALJ's Failure to Perform a Function-by-Function Analysis

The Court rejects Plaintiff's contention that the ALJ erred by failing to perform a function-by-function analysis of how he arrived at the specific limitations in the RFC after rejecting all of the medical opinions in the record. "[T]he Second Circuit has found, 'remand is not necessary merely because an explicit function-by-function analysis was not performed.'" *Richard R.*, 2024 WL 4064084 at *4 (quoting *Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013)); *see also Joshua L. v. Comm'r of Soc. Sec.*, No. 1:24-CV-00048-MAV, 2025 WL 957551, at *7 (W.D.N.Y. Mar. 31, 2025) (collecting cases). Rather, "[t]he relevant inquiry is whether the ALJ applied the correct legal standards and whether the ALJ's determination is supported by substantial evidence." *Fabian E. v. Comm'r of Soc. Sec.*, No. 1:21-CV-187 (JLS), 2023 WL 5843529, at *5 (W.D.N.Y. Sept. 11, 2023) (citing *Cichocki*, 729 F.3d at 177).

Here, the ALJ applied the special technique prescribed by 20 C.F.R. § 404.1520a at step three of his analysis and conducted a thorough evaluation of the evidence before concluding that Plaintiff had no more than moderate limitation in each of the four areas of functioning: understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and regulating emotions, controlling behavior, and maintaining well-being in a work setting. AR at 1247–49. The ALJ stated that his RFC formulation "reflects the degree of limitation the undersigned has found" in applying the special technique. AR at 1250.

19

The ALJ's thorough application of the special technique and discussion of the evidence permitted the Court to "fathom the ALJ's rationale in relation to evidence in the record" in the RFC analysis, which also included considerable analysis of the evidence. *Cichocki*, 729 F.3d at 177 (citing *Berry v. Schweiker*, 675 F.2d 464, 469 (2d Cir.1982)). As discussed above, the ALJ applied the correct legal standards, formulated an RFC supported by substantial evidence, and included a sufficient narrative discussion.

Consequently, the Court finds Plaintiff's second argument in favor of remand to be without merit.

## CONCLUSION

For the foregoing reasons, Plaintiff Shane S.'s motion for judgment on the pleadings [ECF No. 6] is denied, and the Commissioner's motion for judgment on the pleadings [ECF No. 8] is granted. The Clerk of Court is directed to enter judgment on behalf of the Commissioner and close this case.

SO ORDERED.

DATED:    March 18, 2026
          Rochester, New York

HON. MEREDITH A. VACCA
United States District Judge

20